IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES DAVID DANTLEY,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 26-CV-1008** |
| | : | |
| **BETHESDA PROJECT,** | : | |
| **OUR BROTHER'S PLACE,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES, J.                                                   MARCH 25, 2026

Plaintiff Charles David Dantley filed this *pro se* civil action raising claims under federal

and state law based on his ejection from a homeless shelter.  Dantley also seeks leave to proceed

*in forma pauperis*.  For the reasons set forth, Dantley is granted leave to proceed *in forma pauperis*

and his Complaint is dismissed.

## I.    FACTUAL ALLEGATIONS[1]

Dantley names the Bethesda Project's Our Brothers' Place — a homeless shelter in

Philadelphia[2] — and two of its employees, a Jane and John Doe, as Defendants.  (Compl. at 3.)

Dantley asserts that he was "wrongly discharged" from the shelter on November 30, 2025, after

the Jane Doe staff member accused him of smoking in the bathroom the night before.  (*Id.* at 4-5,

8.)  Specifically, Dantley contends that he was in the bathroom on November 29, he was using a

stall, three other men were in the bathroom, Jane Doe entered and said she smelled smoke, and

---

[1]     The factual allegations are taken from Dantley's Complaint ("Compl."). (ECF No. 2.)  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.  Grammar, spelling, and punctuation are cleaned up where necessary.  The Court has also considered matters of public record.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[2]     *See* https://www.bethesdaproject.org/housing-shelter (last visited March 24, 2026).

"she blamed [Dantley] because [he] was the new guy." (*Id.* at 4, 8.) Jane Doe told Dantley that "she was writing [him] up, [and] that [he] would be put out in the morning." (*Id.* at 4.) The next day Dantley "was in and out of the building all day," and that evening he "signed [his] name on the bed list . . . because [he] was still on the list." (*Id.* at 4-5.) After he signed in, "[t]hey did a count then told [him that he] had to go." (*Id.*) Dantley states that there was a "Code Blue" in effect at the time.[3] (*Id.* at 5, 8.) He alleges that the Jane Doe staff member "wrote something" that prevented him from being admitted to any other shelter for thirty days. (*Id.* at 6, 8.)

After his removal from the shelter, he slept on the streets for a week, until he "got sick and had to go to the hospital," where he stayed for another week before going to Gaudenzia Lower Bucks, a drug treatment center.[4] (*Id.* at 6, 9.) Dantley asserts that he never received a "hearing or anything with [his] case manager, [the] staff that wrote [him up,] or the director of the shelter." (*Id.* at 6-7.) He claims violations of his constitutional rights and defamation of character. (*Id.* at 3.) Dantley seeks money damages and injunctive relief to terminate the Jane and John Doe employees from their positions. (*Id.* at 9.)

## II.   STANDARD OF REVIEW

The Court grants Dantley leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires courts to dismiss a complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v.*

---

[3]   Code Blue is the City of Philadelphia's plan for homeless services during cold weather. *See* https://www.phila.gov/services/safety-emergency-preparedness/extreme-weather/code-blue/ (last visited March 24, 2026).

[4]   *See* https://www.gaudenzia.org/location/gaudenzia-lower-bucks/ (last visited March 24, 2026).

2

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in Plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Dantley is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

However, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). Limits on a court's subject matter jurisdiction "may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotation marks and citation omitted).

## III.   DISCUSSION

### A.   *Fourteenth Amendment Claims*

Dantley asserts that his constitutional rights were violated. (Compl. at 3.) Although he does not specify, the Court understands him to allege that the Defendants violated his Fourteenth Amendment right to due process because he says he did not get a hearing. The vehicle by which

constitutional claims are brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

Whether a private entity is acting under color of state law and, therefore, subject to liability under § 1983 depends on whether there is "such a 'close nexus' between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)).  "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Dantley does not directly allege that the Defendants are state actors.  The Court takes note that Bethesda Project describes itself as "a nonprofit organization that provides shelter, housing, and supportive services across 11 locations to adults experiencing homelessness in Philadelphia." Bethesda Project Home Page, https://www.bethesdaproject.org (last visited March 24, 2026). Bethesda Project's website also states that Our Brothers' Place is an emergency shelter "run in

conjunction with the City of Philadelphia." *Shelter and Supportive Housing Sites*, Bethesda Project, https://www.bethesdaproject.org/housing-shelter (last visited March 24, 2026).

State action is not established merely because a private individual or entity contracts with the government, receives substantial government funding, or is subject to extensive government regulation. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019) ("[T]he fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function. The same principle applies if the government funds or subsidizes a private entity." (citing, *inter alia*, *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543-44 (1987); *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982))); *see also Blum*, 457 U.S. at 1011 (rejecting argument that nursing homes were state actors in light of "state subsidization of the operating and capital costs of the facilities, payment of the medical expenses of more than 90% of the patients in the facilities, and the licensing of the facilities by the State"). Even if a private entity posts government signs, "the mere perception of government control is insufficient" to conclude that the government is "entwined" with the acts of the private party. *P.R.B.A. Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 226 (3d Cir. 2015) (citing *S.F. Arts*, 483 U.S. at 546 n.27).

Courts analyzing § 1983 claims against privately run social services entities that operate housing programs and homeless shelters, as well as their employees, have consistently concluded that such defendants are not state actors. *See Bell v. SELF Inc.*, No. 23-3646, 2023 WL 7004419, at *3-5 (E.D. Pa. Oct. 24, 2023) ("[A]ny constitutional claims cannot proceed because the named Defendants—a private non-profit organization and its emergency housing site—are not state actors subject to suit under § 1983." (collecting cases)); *Brown v. Res. for Hum. Dev.*, No. 21-1735, 2021

5

WL 2400616, at *5 (E.D. Pa. June 11, 2021) (collecting cases and finding privately run social services entities, such as a homeless shelter, or its operator, directors, and employees, are not considered state actors); *see also Chance v. Reed*, 538 F. Supp. 2d 500, 507 (D. Conn. 2008) (concluding that Operation Hope, a nonprofit organization that provides emergency shelter and services to the homeless, receives federal and state funding, and is organized as a § 503(c)(3) nonprofit organization under the Internal Revenue Code, was not a state actor); *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-5995, 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020) ("The provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." (cleaned up)); *cf. Schutt v. Melmark, Inc.*, 186 F. Supp. 3d 366, 376 (E.D. Pa. 2016) (concluding that a residential center for intellectually disabled adults was not a state actor despite receipt of state funding).  Claims against the Bethesda Project specifically have been dismissed on this basis.  *See, e.g.*, *White v. Pagotto*, No. 22-3257, 2023 WL 4929306, at *2 (3d Cir. Aug. 2, 2023) (*per curiam*) (affirming the dismissal of § 1983 claims where plaintiff "made no allegations showing that the named defendant, Bethesda Project, Inc., is a state actor").  Because Dantley's Complaint does not include any facts that would lead the Court to conclude otherwise, he has not alleged that the Defendants are state actors.

Even if Dantley could allege that the Defendants were acting under color of state law, it is not clear that he could state a claim for a violation of his procedural due process rights.  To support a procedural due process claim, a plaintiff must first identify a constitutionally protected property or liberty interest and plausibly allege that he was deprived of that interest.  *See Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (explaining that a plaintiff bringing a procedural due process claim "must

allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law" (cleaned up)).

The Court has failed to locate any source of law indicating that Dantley can claim a property or liberty interest in the charitable provision of homeless services such as those described as provided by Bethesda Project. *See Thomas v. Cohen*, 453 F.3d 657, 663 (6th Cir. 2006) (holding that plaintiffs evicted from a transitional homeless shelter did not qualify as tenants under state law and lacked a protected property interest under the Fourteenth Amendment); *Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009) (no property interest in placement within state's homeless shelter program because "broad discretion is given to local authorities in assigning the homeless to shelters"); *Chance*, 538 F. Supp. 2d at 508 ("[T]here is no state law that gives the plaintiff a liberty interest in the continued use of Operation Hope's services, nor does such an interest arise out of the due process clause."); *cf. Stone v. Pamoja House*, 111 F. App'x 624, 626 (2d Cir. 2004) (summary order) ("[W]e have not found, and Stone has not identified, any New York law giving Stone an entitlement to reside in the shelter of his choice. Absent such an entitlement, Stone has no property interest, and thus no due process claim." (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 576-77 (1972)); *Kennedy v. Fields*, No. 23-11949, 2024 WL 3331242, at *4 (E.D. Mich. May 14, 2024) (holding that persons in homeless shelters do not have a property interest in staying at a particular homeless shelter sufficient enough to trigger the protections of procedural due process), *report and recommendation adopted*, 2024 WL 3220720 (E.D. Mich. June 26, 2024). *But see Robinson v. District of Columbia*, No. 23-2961, 2024 WL 2271759, at *6-7 (D.D.C. May 20, 2024) (holding that because D.C.'s Homeless Services Reform Act expressly created an entitlement to "shelter in severe weather conditions," and contained a

7

provision permitting individuals "to sue in severe weather for the full measure of the statutory protections afforded them," plaintiff had a protected interest in remaining in the shelter, but that he had been afforded sufficient process prior to his exclusion (citing, *inter alia*, D.C. Code § 4-755.01(a); *District of Columbia v. Reid*, 104 A.3d 859, 863 (D.C. 2014))).  Dantley's Complaint thus fails to state a cognizable due process claim.

However, because Dantley alleges that some act by the Jane Doe defendant prevented him from accessing other homeless shelters for a period of thirty days, and because Dantley mentions that he has a "case manager" with whom he was not permitted to consult prior to his discharge from the shelter, the Court cannot definitively say at this early stage that amendment of his claims to include more factual detail would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  Accordingly, Dantley will be provided with an opportunity to file an amended complaint, in the event that he can provide the Court with more facts about when, why, how, or by whom he was excluded from other shelters, and why that conduct should be attributed to a person or entity acting under color of state law.

**B.**     *State Law Claims*

Dantley also alleges "defamation of character," which the Court understands to be a claim under state tort law.[5]  Because Dantley's federal claims will be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C.

---

[5]     Defamation is also actionable pursuant to § 1983 under a "stigma-plus" framework, whereby a plaintiff may state a claim by alleging both "a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236.  However, "[a]s stigma-plus is a matter of constitutional protection, once again, for liability to attach, the defendant must be a state actor or acting under the color of law." *Kolakowski v. The Washington Hosp.*, No. 21-574, 2025 WL 949556, at *7 (W.D. Pa. Mar. 28, 2025). Because Dantley has not sufficiently alleged state action for the reasons discussed above, he has not stated a defamation claim under § 1983.

§ 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life,* 800 F.3d at 104 (first quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); then quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  Dantley alleges that he and the Defendants are all Pennsylvania citizens (*see* Compl. at 8), so the Court will dismiss any state-law claims for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Dantley leave to proceed *in forma pauperis* and dismiss his Complaint.  Dantley may file an amended complaint.  An appropriate Order follows, containing more information about amendments.


*NITZA I. QUIÑONES ALEJANDRO, J.*

9